IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LEONARD TAYLOR,
    Plaintiff,

vs.                                Case No. 3:10cv76/WS/EMT

FLORIDA DEPARTMENT OF CORRECTIONS,
et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This case is before the court upon Plaintiff's Fifth Amended Complaint ("complaint") (doc. 24).[1] In his complaint, Plaintiff, a prisoner who proceeds pro se and in forma pauperis (*see* doc. 4), names as Defendants the Florida Department of Corrections ("DOC"), and either thirteen or fourteen employees of Santa Rosa Correctional Institution ("SRCI"), Washington Correctional Institution ("WCI"), and other DOC Facilities.[2] Upon review of the most recent complaint the court concludes that—yet again—Plaintiff has failed to comply fully with its instructions regarding the filing of an amended complaint (*see* court's orders at docs. 5, 12, 16 and 20; Plaintiff's amended complaints at docs. 6, 11, 14, 18, 24). Therefore, in accordance with the court's clear admonition to Plaintiff in

---

[1] Plaintiff's Fifth Amended Complaint was accepted as filed after the court granted his belated motion for extension of time to file it (*see* docs. 23, 26).

[2] Plaintiff names the DOC and thirteen individual Defendants on page one of the complaint, yet he lists the names and addresses of fifteen individual Defendants (in addition to the DOC) on the second and third page of his submission (doc. 24 at 1, 2–3). On the first page of the complaint form, Plaintiff lists: the Florida Department of Corrections, Warden D. Ellis, Warden C. Henderson, ARNP M. Nichols, Dr. W.D. Collins, Dr. Esquivia Munoz, Officer R. Cash, Officer A. Kilgore, Officer M. Quesenberry, Officer T. Brown, Officer R. Nelson, Sgt. E. Sellers, Sgt S.H. Jones, and Lt. J. Schwarz. On pages two and three of the complaint form, Dr. W.D. Collins is listed twice and Plaintiff adds C. Greene, and Dr. Pascasio Lopez-Padilla, who were not listed on page one. Dr. Lopez-Padilla is not mentioned in the factual allegations. And, Plaintiff states on page eight that "Defendant #14 Grievances Reviewer C. Greene is voluntarily dismissed" although the complaint contains allegations against this Defendant, as will be discussed herein.

its order dated February 15, 2012, that he would be given no additional opportunities to file an acceptable amended complaint in this case (*see* doc. 20 & doc. 20 at 1 (advising Plaintiff in relevant part the he would be allowed "<u>one last opportunity</u> to clarify and refine his allegations in a fifth amended complaint") (emphasis in original))), the court recommends dismissal of the action without prejudice.

Among other matters, the court's prior orders included the following instructions and citations to the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Florida, and case law:

1. Plaintiff must use, and complete in its entirety without substantial modification, this district's approved civil rights complaint form for prisoners. *See* N.D. Fla. Loc. R. 5.1(J). Plaintiff must comply with all instructions provided in the complaint form.[3]

2. Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The continued failure to cure defects in pleading requirements as required by Rule 8(a) may result in the dismissal of the Plaintiff's case. *See* Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972).

3. Plaintiff's allegations must be limited to claims related to the same basic incident or issue, and he should name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff may not bootstrap together in one complaint claims that rely on different incidents or issues. He must bring allegations of harm by several different individuals, in several different incidents, in separate complaints. To pursue such claims he will be required either to pay the filing fee in each individual action or obtain leave to proceed in forma pauperis.

4. Plaintiff must keep the court apprised of his current address, and the failure to do so may result in dismissal of his case.

---

[3] In Plaintiff's Fourth Amended Complaint he failed to truthfully and completely list all of his previously filed cases, an omission that could have provided ample grounds for dismissal without prejudice of his case (*see* doc. 20 at 1 n.2).

Case No.: 3:10cv76/WS/EMT

5.     Plaintiff should not file exhibits as evidentiary support for his complaint (the court will notify Plaintiff when exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment).

In the Fifth Amended Complaint Plaintiff again does not follow all of the instructions he has been given. Plaintiff has failed to properly complete the appropriate section of the complaint form itself. For instance, Plaintiff fails to use the space provided in the form for the "Statement of Facts," instead noting "see attached" (doc. 24 at 7). Although the complaint form further provides that "[b]arring extraordinary circumstances, no more than five (5) additional pages should be attached" (*id.*), Plaintiff has included seventeen (17) pages of facts setting forth his various allegations. In addition, Plaintiff has attached numerous "exhibits" to the complaint. These exhibits include a memorandum/receipt for legal materials bearing dates of 2011 and 2012 and copies of two envelopes mailed to Hamilton Correctional Institution in 2012 (exhibit A); a disciplinary report dated March 1, 2012, and a virtually illegible property impoundment receipt from 2012 (exhibit B); two informal grievances directed to the law library, a copy of a motion for extension of time filed in a case in the Southern District of Florida, and internal prison logs pertaining to library call-out, legal mail and Bible study, all from February of 2012 (exhibit C). None of the attachments have any apparent relevance to the time frame or allegations in the complaint, nor are they referenced in the complaint.

With respect to Plaintiff's substantive allegations, he alleges purported violations of his constitutional rights that occurred from October of 2007 through July of 2008, ranging from the filing of false disciplinary reports, to inadequate medical care, to the use of excessive force against him, and to the improper denial of his grievances. Plaintiff asserts that from October through December of 2007, SRCI employees Cash, Kilgore and Quesenbery filed fabricated and retaliatory disciplinary reports against him, confiscated and/or destroyed his personal property, refused to let him file grievance forms, and threatened him with filing of additional disciplinary reports ("DR's") against him (doc. 24-1 at 10–13). Plaintiff contends that Sgt. Burch, who is not named as a Defendant in this action, allegedly told one of Plaintiff's cellmates that Burch's officers had to "hook him up" because he continued to write grievances after he was warned to stop (*id.* at 12). Plaintiff also alleges that there was some sort of discriminatory animus because he is a Jewish

African American and the officers were white, although he has provided no facts supporting his suggestion of religious discrimination (*id*. at 10).

Plaintiff alleges he was attacked by another inmate, Dillard Pettiway, in March of 2008 on the Jewish holiday of Purim (doc. 24 at 14).  Plaintiff describes Pettiway as an "informant hit-man" who had been placed into his cell for this purpose by "angered security and administrative officials" who are not identified by name (*id*. at 14).  Plaintiff states that following the incident with Pettiway, he was transported to West Florida Hospital and obtained a CAT scan of his head and neck (*id.*). He returned to SRCI with stitches above both eyes and on his right ear, as well as a painful and swollen ankle (*id*.).  Plaintiff was discharged from the SRCI infirmary to a regular dormitory almost immediately and was assigned to a top bunk, despite his complaint that he needed an x-ray of his ankle and a temporary lower bunk pass (*id*. a 15).  Plaintiff received additional medical treatment at SRCI for his injuries before he was transferred to WCI on March 25, 2008 (*id.*).  Plaintiff complains that the officers involved in his transfer, only some of whom are named as Defendants, caused him to exert unnecessary stress on his ankle by forcing him to drag four bags of legal papers to the transport bus, and they called him names (*id*. at 15–16)

Plaintiff filed grievances about the medical care he received for his injured ankle while he was at the Reception Medical Center and/or WCI, but he was dissatisfied with the responses, including a response from Dr. Collins, who does not appear to have been one of his treatment providers but who is named as a Defendant in this action (doc. 24 at 16).   Plaintiff appealed the grievance response, and he asserts, without offering any factual support, that he was transferred back to SRCI as "punishment" for having filed this appeal (*id.*).  Plaintiff continued to pursue treatment for his ankle, insisting that it was broken and not sprained.  On May 7, 2008, because the ankle still appeared swollen and uncomfortable, Defendant ARNP Nichols approved Plaintiff being x-rayed (*id*. at 17).  Two x-rays taken on May 14 and May 21 confirmed the presence of a bone fracture, and Plaintiff was referred to the Regional Medical Center for a consultation with an orthopedic specialist (*id*. at 18).  Orthopedist and Defendant Esquivia Munoz took a third x-ray at which time he confirmed that  there had been a fracture, but told Plaintiff that the bone had healed itself (*id*.).  During Plaintiff's follow-up visit to Dr. Munoz on September 16, 2008, an additional x-ray re-confirmed Dr. Munoz's initial impression that the bone had healed itself (*id.* at 19).  Despite

Plaintiff's admission that by the time of the September x-rays the apparently minor fracture had healed itself, Plaintiff complains that he suffered damage because Dr. Munoz failed to order him a temporary low bunk pass, weight limit restrictions, or provide cushion inserts for his shoes (*id.*).

In a separate section of the complaint, Plaintiff contends that Lt. Schwarz and Sgt. Jones of SRCI observed Plaintiff's head trauma and trouble walking after the attack by inmate Pettiway and that they were somehow deliberately indifferent to his plight (doc. 24 at 19–20). He does not explain, however, what the non-medical officials could or should have done as they observed Plaintiff being escorted to the medical department for treatment.

Next, in allegations that are virtually identical to those included in his previous complaint, Plaintiff alleges that Dr. Collins and Asst. Warden Haas were deliberately indifferent in denying his grievance about inadequate medical care, that grievance reviewer C. Greene violated his rights by returning an emergency grievance regarding Plaintiff's bunk assignment without taking action, and that as a result of Greene's inaction, three officers forced him to take an upper bunk despite his ankle injury (doc. 24 at 20–22, *compare* doc. 18 at 19–20).[4]

The next portion of Plaintiff's complaint addresses an incident that occurred in June or July of 2008. Plaintiff alleges that he was transferred from SRCI to WCI at some point in early June or July of 2008.[5] He asserts that at the time of his transfer, Officer Nelson singled him out to hinder his ability to transport his legal papers, and ultimately tripped the handcuffed and shackled Plaintiff, who fell to the pavement as other officers stood by and laughed (doc. 24 at 22–23). Shortly thereafter, Officer Brown allegedly told Nelson that Plaintiff had filed lawsuits in the late 1990's while he was previously incarcerated and had caused "nothing but problems" (*id*. at 24). Sgt. Sellers, who was helping Plaintiff and other inmates load up into the bus, shoved Plaintiff as he passed, knocking him into the driver's seat. Sellers and Nelson had to grab Plaintiff to help him stand up. Before closing the door to the bus, Sellers warned Plaintiff that he should "remember" Sgt. Sellers when Plaintiff thought about writing grievances, and that Sellers would be waiting for

---

[4] Neither Haas, nor Greene, nor officers Brennan, Rovine and Cook are named as Defendants in the most recent complaint.

[5] In four consecutive paragraphs of the complaint, Plaintiff asserts that he was transferred on June 10, June 11, July 8 and July 9, 2008 (doc. 24 at 22).

Case No.: 3:10cv76/WS/EMT

Plaintiff when he passed through again (*id*.).  Plaintiff asserts that upon his arrival at RMC he reported the use of force by Nelson and Sellers to the intake nurse Elliot, who is not named as a Defendant in this action (*id.* at 25).  He complained of left shoulder and back injuries, aching pain, and abrasions on left forearm and both knees (*id*.).  Elliott told Plaintiff she would write up a use of force report and refer Plaintiff to the emergency room, but she never did so because "Washington Annex had call[ed] ahead and acquired RMC help cover [sic] up the wrong" (*id*.).

Plaintiff's final claim is that Warden Ellis and Acting Warden Henderson denied each one in a series of eighteen grievances he filed in which he alleged that he was not provided dental hygiene provisions, that he was denied medical treatment, that his meals were tampered with, that his personal and legal property was destroyed, that he was subjected to race discrimination and spoken threats, and that he requested removal from SRCI (doc. 24 at 26).

Clearly the allegations set forth above fail to comply with the court's instructions as well as the instructions on the complaint form that Plaintiff's claims be related to the "same basic incident or issue" (doc. 20 at 2, 8; doc. 24 at 7).  The facts described in Plaintiff's Fifth Amended Complaint do not relate to the same basic incident; indeed, even generously construed, Plaintiff recites at least six different incidents (or groups of incidents) involving various Defendants that occurred at different times between October of 2007 and July of 2008.  Moreover, these facts do not describe claims that are related to the same basic issue.  While some of his assertions are apparently related to what he believes to be a broad conspiracy to retaliate against him for writing grievances, they are too wide-ranging to be the subject of a single complaint.  And, his allegations regarding what likely amounts to be medical negligence bear no apparent relation to the alleged conspiracy.  Based on the allegations set forth above, Plaintiff asserts legal claims implicating issues as diverse as the violation of the right to be free of cruel and unusual punishment; discrimination on the basis of his Jewish faith and African American race; retaliation; infringement of the right to free speech; the use of excessive force; and conspiracy.  While the court is required to construe Plaintiff's pro se pleadings liberally, it is not required to write his deficient pleadings.  *See* GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).  Moreover, even a pro se litigant such as Plaintiff must conform to procedural rules.  *See* Loren v. Sasser, 309 F. 3d 1296, 1304 (11th Cir. 2002).

A district court may *sua sponte* dismiss an action for the plaintiff's failure to comply with the rules or any order of the court. *See* Fed. R. Civ. P. 41(b). Here, Plaintiff has persistently failed to comply with the court's orders regarding the requirements for filing an amended complaint, and he has done so despite having been warned that the consequence of such action would be the dismissal of this case (*see, e.g.*, doc. 20 at 1–2, 9). Moreover, it appears that this failure has been willful, as the requirements appear to be well within Plaintiff's capability, as demonstrated by the organization and detail of the six complaints he has now filed in this matter. For these reasons, the court concludes that a recommendation of dismissal of this action pursuant to Rule 41(b) without prejudice is appropriate.[6] *See* <u>Tanner v. Neal</u>, 232 Fed. Appx. 924 (11th Cir. 2007) (affirming *sua sponte* dismissal without prejudice of inmate's § 1983 action for failure to file an amended complaint in compliance with court's prior order directing amendment, noting that inmate was provided with "a standard form, a clear description of what her complaint should contain, and page and exhibit limitations," but the overall form and content of her amended complaint showed that she did not comply with the district court's order after being warned of the consequences); *see also* <u>Hernandez v. Century Correctional Institution</u>, Case No. 3:07cv404/LAC/EMT (docs. 50, 53, 66) (district court dismissed pro se plaintiff's fifth amended complaint under Rule 41(b) and the Eleventh Circuit found that plaintiff's appeal of the dismissal was frivolous).

Accordingly, it is respectfully **RECOMMENDED**:

1. That this cause be **DISMISSED, without prejudice**, pursuant to Fed. R. Civ. P. 41(b).

2. That the clerk of court enter judgment dismissing this action without prejudice.

At Pensacola, Florida, this <u>23rd</u> day of May 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] Plaintiff has not requested leave to file a sixth amended complaint pursuant to Fed. R. Civ. P. 15(a). The court notes, however, that even if he did, under this Rule reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility" are proper bases to deny a plaintiff's motion to amend. *See* <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (emphasis added).

Case No.: 3:10cv76/WS/EMT

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**